UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAVID LEE JOHNSON,<br>*also known as David Ali Shabazz,*<br><br>       Plaintiff,<br>v.<br><br>MILWAUKEE COUNTY,<br><br>       Defendant. | Case No. 12-CV-1148-JPS<br><br><br>ORDER |

  The plaintiff, David Lee Johnson,[1] is currently an inmate at Waupun Correctional Institution. He has sued Milwaukee County[2] alleging that, while a pretrial detainee at the Milwaukee County Jail, he was placed in a cell in the segregation unit without lights or running water. (*See* Docket #11, #74). The sole defendant, Milwaukee County, has moved for summary judgment. (Docket #119). That motion is fully briefed (Docket #123, #134, #136), and the Court now decides it.

---

  [1]Mr. Johnson has written to the Court, notifying it that his legal name is David Ali Shabazz. (Docket #128). The Court will, however, refer to him as Mr. Johnson throughout the duration of this order, because that is the name that the Court has used to describe him throughout the course of this action.

  [2]Mr. Johnson also originally sued "Nurse Lisa," a nurse at the Milwaukee County Jail. He asserted that Nurse Lisa had violated his medical right to privacy. The Court dismissed that claim at screening, leaving only Mr. Johnson's Fourteenth Amendment claims against Milwaukee County pending. (Docket #12). Magistrate Judge William Callahan, who presided over this case before his retirement, reaffirmed that Mr. Johnson would be allowed to proceed only on his Fourteenth Amendment claims against Milwaukee County. (Docket #109 at 5). Mr. Johnson moved for reconsideration, seeking also to proceed on an Eighth Amendment claim (hypothetically also against Milwaukee County, alone). (Docket #113). After being reassigned the case, this Court denied Mr. Johnson's motion for reconsideration. (Docket #133). So, as it stands, Mr. Johnson has only two claims (both rooted in the Fourteenth Amendment, as the Court will discuss further) against a single defendant (Milwaukee County).

1. SUMMARY JUDGMENT STANDARD

The Court, as it must on summary judgment, accepts the facts in the light most favorable to Mr. Johnson. *Tradeseman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). "A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law. The party pursuing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a), (c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978–79 (7th Cir. 1996)). In reviewing a motion for summary judgment, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013)). "While the evidence is viewed in a light most favorable to the non-moving party, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Inferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)) (internal quotations omitted).

2. FACTUAL BACKGROUND

To begin, the Court notes that Mr. Johnson has not responded to Milwaukee County's proposed findings of fact, and thus the Court deems Milwaukee County's proposed findings of fact to be admitted. (Docket #120). Civil L.R. 56(b)(2)(B)—which Milwaukee County provided to Mr. Johnson

(*see* Docket #119)—requires any party opposing a motion for summary judgment to provide "a concise response to the moving party's statement of facts." If the opposing party does not object to a proposed fact, the Court "will deem" that fact as "admitted solely for the purpose of deciding summary judgment." Civil L.R. 56(b)(4). Thus, the Court will treat Milwaukee County's proposed findings of fact as having been admitted for the purpose of summary judgment.

In the end, it is not of great relevance that the Court has deemed admitted Milwaukee County's proposed facts. Milwaukee County's version of events is well-supported by the evidence, and Mr. Johnson has not identified any material disputes with that version of events.[3]

One thing is very clear: Mr. Johnson was housed in a cell in the segregation unit for a period of no more than 24 hours. The parties agree that on October 10, 2012, and lasting until October 11, 2012,[4] Mr. Johnson was placed in Pod 4D, Cell 3901. (*See, e.g.*, Docket #121 ¶ 34; Docket #121, Ex. B; Docket #134). Milwaukee County does not dispute that Pod 4D is used to house inmates who have been placed in disciplinary segregation. (Docket #123 at 6; Docket #121 ¶ 35). It does, however, allege that it placed Mr.

---

[3]There is only one significant difference between the parties' version of events: Mr. Johnson asserts that he was placed in a cell without lights or running water; Milwaukee County disagrees. Ultimately, though, this fact is immaterial. (*See* Section 3, *infra*).

[4]Originally, it seemed as if Mr. Johnson was claiming that he had been placed in segregation from September 10, 2012, until October 11, 2012 (or more than 30 days). (*See* Docket #11, #12). However, given his booking date of September 28, 2012, that would be impossible. (*See* Docket #121, Ex. B). Moreover, Mr. Johnson seems now to agree that he spent no more than 24 hours in segregation. (Docket #134 at 1 ("I was taken to segregation that day [October 10, 2012] for 24 hours.")).

Johnson in Pod 4D on the request and recommendation of its medical staff. (Docket #123 at 6–7; Docket #121 ¶¶ 34, 41–43; Docket #121, Ex. B).

Milwaukee County acknowledges that it occasionally places detainees in Pod 4D "for reasons other than disciplinary segregation or maximum custody status." (Docket #123 at 6; Docket #121 ¶ 36). However, when it does so, the detainees are not subject to disciplinary conditions of confinement: "they receive standard meal service, have regular professional visitation, have regular visitation unless determined to be unsafe to do so, are not restricted to one-hour out of cell, are allowed in the recreation area as many hours per day as can be safely and administratively accomplished, and receive other privileges not allowed to disciplinary status inmates." (Docket #123 at 6; Docket #121 ¶ 39). At no point was Mr. Johnson subject to the disciplinary or punitive aspects of being placed in segregation. (Docket #121 ¶¶ 41, 42).[5]

The only disputed fact is whether Mr. Johnson's cell in Pod 4D lacked operational lights and/or running water.[6] Mr. Johnson maintains that the cell lacked lights and/or running water. Milwaukee County disagrees and has produced circumstantial evidence supporting its position that the cell was fully functional. (*See* Docket #121, Ex. D). Specifically, Milwaukee County points out that inmates would not be allowed to stay in a cell without lights or water for both sanitary and safety reasons (including the safety of

---

[5]Both prior to and after October 10, 2012, Mr. Johnson was placed in other, non-segregation pods in the Milwaukee County Jail. (*See* Docket #121, Ex. B). These other placements are not at issue in this case and, in any event, were justified. (*See, e.g.*, Docket #121, Ex. B; Docket #122, Ex. A).

[6]And, really, it is not disputed, as Mr. Johnson failed to oppose Milwaukee County's proposed findings. The Court, nonetheless, will discuss it, as its analysis addresses the many alternate reasons for dismissing Mr. Johnson's complaint.

corrections staff) (Docket #121 ¶¶ 47–49); that corrections staff routinely inspect all of the cells in the Milwaukee County jail (Docket #121, Ex. D (cell maintenance reports)); that, in conducting those inspections, corrections staff typically report any issues (Docket #121, Ex. D); and the maintenance logs for Pod 4D do not indicate that there were any maintenance issues in Mr. Johnson's cell on the date in question (Docket #121, Ex. D). Basically, Milwaukee County's position is that the *lack* of a maintenance report is proof that the lights and water in the cell were functional, because if there had been maintenance issues, it would have been reported. This is logical, but runs up against Mr. Johnson's own personal recollections. In the end, as the Court will discuss in the next section, this proves immaterial. Nonetheless, the Court cannot definitively state that Mr. Johnson's cell did or did not have operational lights and/or running water.

3.   ANALYSIS

With those basic facts in place, the Court turns to analyzing Mr. Johnson's claims. Mr. Johnson's claims that two actions—his placement in segregation and his placement in a cell without operational lights and/or running water—both violated his Fourteenth Amendment rights. It is important to remember that Mr. Johnson has asserted these claims against Milwaukee County, alone. He has not asserted them against any individual defendant. So, there are two important legal standards in play: the standards applicable to a Fourteenth Amendment conditions-of-confinement claim; and the standards applicable to 42 U.S.C. § 1983 actions brought against municipalities under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

The Fourteenth Amendment standard, as applied to pretrial detainees like Mr. Johnson, was recently clarified by the Supreme Court. *See Kingsley*

*v. Hendrickson*, --- U.S. ----, 135 S.Ct. 2466 (2015). Shortly after the Supreme Court issued *Kingsley*, the Seventh Circuit summarized the applicable Fourteenth Amendment standard:

> The standard finds its origin in *Bell v. Wolfish*, 441 U.S. 520 (1979), wherein the Supreme Court said that the proper question to guide determination of the legality of conditions of confinement in pretrial detention pursuant to the Due Process Clause is "whether those conditions amount to punishment of the detainee." *Id.* at 535….The *Bell* Court "explained that such 'punishment' can consist of actions taken with an 'expressed intent to punish.'" *Kingsley*[, 135 S.Ct. at 2474] (quoting *Bell*, 441 U.S. at 538). "[T]he *Bell* Court went on to explain that, in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 561).…
>
> [To prevail on a Fourteenth Amendment claim, a plaintiff] must prove that the defendant "possess[ed] a purposeful, a knowing, or possibly a reckless state of mind" with respect to the defendant's actions (or inaction) toward the plaintiff. *Kingsley*, [135 S.Ct. at 2472].

*Davis v. Wessel*, No. 13-3416, --- F.3d ----, 2015 WL 4095358, at *5 (7th Cir. July 7, 2015).

There are more specific standards that apply to the placement of pretrial detainees in segregation. First, "[a] pretrial detainee cannot be placed in segregation as punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less…[b]ut no process is required if he is placed in segregation not as a punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (citing *Bell*, 441 U.S. at 535–41; *Rapier v. Harris*, 172 F.3d 999, 1004–05 (7th Cir. 1999); *Fuentes v. Wagner*, 206 F.3d 335, 341–42 (3d Cir. 2000); *Mitchell v. Dupnik*, 75

F.3d 517, 524–25 (9th Cir. 1996)). Second, mere placement in a segregation unit, without further loss of liberty, does not violate the constitution. *See Miller v. Dobier*, 634 F.3d 412, 415 (7th Cir. 2011) ("Even when Miller was in 'close' status, he was free to leave his cell for most of the day, to receive visitors, and in this and other respects to avoid extremes of close confinement such as are encountered in segregation units. It is because intermediate status is so loose that general status or close status seems confining; but the additional restrictions are too limited to amount to a deprivation of constitutional liberty.") (citing *Lekas v. Briley*, 405 F.3d 602, 611 (7th Cir. 2005); *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003).

The *Monell* standard, meanwhile, is very well established. It provides that "[a] government entity can be held liable under § 1983 [only] when the execution of a government policy or custom is deemed to inflict an injury on a plaintiff." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (citing *Monell*, 436 U.S. 658). "[A] municipality cannot be held liable solely on the grounds of *respondeat superior*." *Rossi*, 790 F.3d at 737 (citing *Monell*, 436 U.S. at 691). In keeping with those limitations,

> [t]he Supreme Court has recognized three particular grounds on which a municipality can be held liable under § 1983. There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury.

*Rossi*, 790 F.3d at 737 (citing *Lawrence v. Kenosha County*, 391 F.3d 837, 844 (7th Cir. 2004)). Furthermore, "if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported." *Petty v. City of Chicago*, 754 F.3d

416, 424 (7th Cir. 2014) (citing *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010)). In other words, "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger*, 630 F.3d at 504.

Applying these standards to the undisputed facts, the Court is obliged to grant Milwaukee County's motion for summary judgment.

First, Mr. Johnson's placement in segregation did not violate his rights under the Fourteenth Amendment. The conditions that Mr. Johnson faced in the segregation unit were not harsh: he was placed there for no more than 24 hours and during that time had access to meal service, recreation, visitation, and other privileges (and, to be clear, Mr. Johnson has not disputed this). Restrictions of this sort "are too limited to amount to a deprivation of constitutional liberty." *Miller*, 634 F.3d at 415 (finding that longer period of confinement in "close" status, which allowed for similar freedoms—ability to leave cell and receive visitors—did not amount to a constitutional deprivation). However, even if the conditions themselves reached the level of a deprivation of constitutional liberty, Mr. Johnson cannot establish the requisite motive. As the Court already noted, on summary judgment "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Armato*, 766 F.3d at 719. Mr. Johnson has not done so, here. There is, in fact, no evidence of improper motive for confining Mr. Johnson in the segregation unit; Mr. Johnson's assertion that he was placed there for punitive purposes rests on his beliefs, alone, and thus is not admissible evidence. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 ("Personal knowledge can include reasonable inferences, but it does not include speculating as to an employer's state of mind, or other intuitions, hunches, or rumors.") (citing Fed. R. Civ. P. 56(e); Fed. R. Ev. 602; *Payne v.*

*Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). In fact, the evidence supports Milwaukee County's position that Mr. Johnson was placed in segregation for medical reasons. Thus, because Mr. Johnson has failed to produce any evidence of intent—whether purposeful, knowing, or reckless—and because the record actually supports Milwaukee County's position that placement in segregation was intended for medical reasons, this claim fails. *See, e.g.*, *Higgs*, 286 F.3d at 438; *Davis*, 2015 WL 4095358, at *5. And, without evidence of any underlying constitutional violation, Mr. Johnson certainly cannot prevail on his *Monell* claim against Milwaukee County. *See, e.g.*, *Petty*, 754 F.3d at 424; *Sallenger*, 630 F.3d at 504.

Second, Mr. Johnson's claim that he was placed in a cell without lights and/or water fails because—even if that occurred[7]—Milwaukee County cannot be liable for that deprivation under *Monell*. To prevail against Milwaukee County on this claim, Mr. Johnson is required to establish that he was placed in a cell without lights or water as a result of: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final

---

[7]In contrast to Mr. Johnson's statements about the motivation behind his placement in segregation, his statements regarding the lack of lights and water in his cell stem directly from his personal knowledge and, thus, constitute evidence supporting his claim. *See Widmar*, 772 F.3d at 459–60; Fed. R. Civ. P. 56(e); Fed. R. Ev. 602. To be sure, Milwaukee County has produced evidence that implies that Mr. Johnson must be incorrect. But, ultimately, that is just conflicting evidence that would need to be presented to the jury. So, this would appear to constitute a dispute of material fact requiring trial. That is not the case, though, because even accepting Mr. Johnson's version of events as true, *King*, 781 F.3d at 895, Mr. Johnson still could not prevail on this claim under *Monell*.

Page 9 of 10

Case 2:12-cv-01148-JPS   Filed 08/26/15   Page 9 of 10   Document 137

policy-making authority caused a constitutional injury." *Rossi*, 790 F.3d at 737 (citing *Lawrence*, 391 F.3d at 844). He has not produced any evidence to establish that any of those three situations exist as he is required to do to escape summary judgment. *Armato*, 766 F.3d at 719 ("the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."). In fact, there is not even evidence that any other inmate at the Milwaukee County Jail was put in a similar situation. So, even if Mr. Johnson is correctly describing his experience, Milwaukee County is not responsible for those events and cannot be held liable therefor under *Monell*.

4.  CONCLUSION

For the foregoing reasons, the Court is obliged to grant Milwaukee County's motion for summary judgment. (Docket #119)

Accordingly,

IT IS ORDERED that Milwaukee County's motion for summary judgment (Docket #119) be and the same is hereby GRANTED and this matter be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of August, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge